UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.:  05 CV 7905
Judge Casey

PRESIDION SOLUTIONS, INC.,

  Plaintiff,

vs.

BRENTWOOD CAPITAL CORPORATION
and CHARLES J. SPINELLI, individually,
and O. RAY MCCARTHA, individually,

  Defendants.

_____/

**FIRST AMENDED COMPLAINT**

Jury Trial Demanded

Plaintiff, PRESIDION SOLUTIONS, INC. (hereinafter "PRESIDION"), through its attorneys, BERMAN, KEAN & RIGUERA, P.A., as and for its complaint against Defendants BRENTWOOD CAPITAL CORPORATION (hereinafter "BRENTWOOD"), CHARLES J. SPINELLI (hereinafter "SPINELLI") and O. RAY MCCARTHA (hereinafter "MCCARTHA") (collectively "the Defendants") allege as follows:

**NATURE OF THE ACTION**

1. This is an action for fraud and for rescission of various written agreements entered into by PRESIDION and Defendants BRENTWOOD, SPINELLI and MCCARTHA, to secure certain Irrevocable Letters of Credit, which later were discovered to be forged by Defendants. Plaintiff now seeks compensatory and punitive damages as a result of Defendants' fraudulent actions, including damages for fraud, conspiracy and for conversion, and compensatory damages for Defendant BRENTWOOD's breach of contract.

Presidion v. Brentwood, et al.
Case No.: 05 CV 7905

## JURISDICTION

2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 (a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states.

## VENUE

3.    Venue is proper in the Southern District pursuant to 28 U.S.C. §1391(a)(2) and (a)(3) because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District and a substantial part of the property that is the subject of this action is located in the Southern District and because the Southern District is the judicial district where one or more Defendants are subject to personal jurisdiction at the time the action was commenced.

## THE PARTIES

4.    Plaintiff, PRESIDION is a Michigan Corporation with its principal place of business located in Troy, Michigan. Plaintiff entered into various written agreements with Defendants in New York, New York to obtain certain Irrevocable Letters of Credit for its workers compensation insurance programs.

5.    Defendant BRENTWOOD is a New York Corporation with its principal place of business in New York, New York.  BRENTWOOD issued the fraudulent Letters of Credit to PRESIDION while operating out of its New York, New York office.

6.    Defendant SPINELLI is a individual residing in New Jersey and Chief Executive Officer of BRENTWOOD in its New York, New York office.

Presidion v. Brentwood, et al.
Case No.: 05 CV 7905

7.    Defendant MCCARTHA is an individual residing in Florida who attended the BRENTWOOD meetings in New York, New York on behalf of Plaintiff and who was involved with the issuance of the fraudulent Letters of Credit out of BRENTWOOD'S New York office. The causes of action arise from the activities of Mr. McCartha in New York.

### FACTS

8.    In October of 2002, PRESIDION was required to secure Letters of Credit pursuant to its worker's compensation insurance policies with Lumberman's Underwriting Association (hereinafter "Lumberman's") and First Commercial Insurance Company ("First Commercial").

9.    As a result, PRESIDION was introduced to BRENTWOOD, SPINELLI and MCCARTHA by John Burcham, PRESIDION's former Chairman.

10.    After much discussion and negotiation, on October 15, 2002, PRESIDION entered into various written agreements with Defendants in New York, New York to secure two Letters of Credit.

11.    PRESIDION issued a Promissory Note to BRENTWOOD in the amount of $5.7 million (hereinafter "the Note"), with principal and interest due on the Note within one-year.

12.    The Note was subject to a Loan Agreement (hereinafter "Loan Agreement") and the Stock and Collateral Pledge Agreement (hereinafter "Collateral Agreement") executed on the same date.

13.    In return for the execution of these agreements, BRENTWOOD provided two one-

year Irrevocable Letters of Credit for PRESIDION's worker's compensation insurance programs.

14.     One Letter of Credit was issued to Lumberman's for $4.7 million and the other Letter

of Credit was issued to First Commercial for $1 million, totaling $5.7 million.  True and correct

copies of the Letters of Credit to Lumberman's and First Commercial are attached hereto as Exhibits

A and B respectively.

15.     Pursuant to the Note and the Loan Agreement, PRESIDION agreed to pay

BRENTWOOD 7.5% interest in weekly payments of $8,221.16 for the issuance of the $5.7 million

Letters of Credit.

16.     Pursuant to the Collateral Agreement, PRESIDION secured the repayment of the

principal amount of the loan by two types of collateral: stock collateral, which was the issued and

outstanding shares of PRESIDION subject to the senior pledge of Comerica Bank, and a Cash

Collateral account consisting of PRESIDION's weekly payments of $109,615, which would result

in the entire $5.7 million being paid in one year (hereinafter "the Cash Collateral").

17.     Pursuant to paragraph 3(e) of the Collateral Agreement, the Cash Collateral was to

be held in escrow by BRENTWOOD and paid to PRESIDION as follows:

> Upon satisfaction by PRESIDION of the terms of the Secured
> Obligations[1], the Cash Collateral shall be returned to PRESIDION
> according to its written instructions.

18.     To date, PRESIDION has paid $2.3 million into the Cash Collateral escrow account,

---

[1] Pursuant to paragraphs 3(d) of the Collateral Agreement, the terms of the Secured
Obligations consist of payment of the principal and weekly interest payments at the end of the
one year term pursuant to paragraph 2.1 of the Loan Agreement.

$172,000 in interest and a commitment fee of $570,000 (10% financing charge on the entire face value of the Letters of Credit) for total payments of approximately $3 million received by BRENTWOOD.

19.     The Letters of Credit were drafted by BRENTWOOD, acting through SPINELLI and MCCARTHA, who issued them on Bank of the West letterhead for the benefit of Lumberman's and First Commercial.

20.     MCCARTHA, who worked as an insurance broker/agent through PDR Consulting Co., and who, upon information and belief, was on the Board of Directors of both Brentwood and CSRV, an affiliate of BRENTWOOD, was hired by Plaintiff to obtain the Letters of Credit.

21.     The Letters of Credit, however, were not honored by Bank of the West because the Defendants had forged the signatures of the banks' representatives and the Letters of Credit were prepared without the authority, knowledge or agreement of the Bank of the West.

22.     As a result of the fraudulent Letters of Credit issued by BRENTWOOD, through SPINELLI and MCCARTHA, PRESIDION had to incur additional expenses to replace the Letters of Credit required by Lumberman's and First Commercial, which expense Plaintiff never would have had to incur if it wasn't for the Defendants' fraudulent actions.

23.     In February, 2003, PRESIDION marked the Letters of Credit void and cancelled and returned the full face value of the Letters of Credit to BRENTWOOD, not drawn upon, demanding return of the $2.3 million Cash Collateral.

24.     BRENTWOOD and SPINELLI, however, have refused to return the Cash Collateral

to PRESIDION despite the fact that the Letters of Credit were fraudulent and that Lumberman's and First Commercial were unable to draw against them.

25.    In March of 2003, PRESIDION attended a meeting in Miami, Florida, with BRENTWOOD to discuss the return of the $2.3 million Cash Collateral.

26.    Upon information and belief, John Burcham, on behalf of PRESIDION, and Defendant SPINELLI, representing BRENTWOOD, and MCCARTHA were in attendance at that March 2003 meeting.

27.    At that meeting that SPINELLI stated that BRENTWOOD would not return the $2.3 million Cash Collateral to PRESIDION. It was the intention of Defendants to forge the signatures on the Letters of Credit in hopes that the Letters of Credit would expire in the one- year before they were drawn upon and before Plaintiff ever discovered the fraudulent signatures.

28.    It was also the intention of the Defendants to delay Plaintiff's efforts to collect the Cash Collateral. Subsequent to that meeting and for approximately the next 14 months, PRESIDION and CSRV, an entity affiliated with BRENTWOOD, entered into negotiations for CSRV to acquire PRESIDION.

29.    During the merger discussions, the issue of the $2.3 million Cash Collateral was put on hold.

30.    In fact, Anthony Huff, a representative of CSRV told Burchan, the former Chairman of PRESIDION, that there was no need to continue to discuss the issue of the $2.3 million Cash Collateral because "the money would just be in the family."

31.    The merger discussions, however, broke off in the summer of 2004.

32.    At that time, PRESIDION demanded the return of the deposit with no response from BRENTWOOD.

### FIRST CAUSE OF ACTION FOR FRAUD

33.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 32 above as if fully set forth herein.

34.    The foregoing material representations of fact made by Defendants and reasonably relied upon by Plaintiff were false and known to be false when made by Defendants.

35.    Plaintiff entered into the Note, the Loan Agreement and the Collateral Agreement to obtain the Letters of Credit from BRENTWOOD, based upon Defendants' representations and warranties to Plaintiff that BRENTWOOD, SPINELLI and MCCARTHA would provide PRESIDION with legal and valid Letters of Credit as required by Lumberman's and First Commercial for PRESIDION's worker's compensation insurance policies.

36.    Plaintiff reasonably relied on BRENTWOOD, SPINELLI and MCCARTHA to provide legal and valid Letters of Credit for Plaintiff's use and BRENTWOOD, SPINELLI and MCCARTHA made material representations of fact that the Letters of Credit were legal and valid. BRENTWOOD, SPINELLI and MCCARTHA, however, planned to forge the documents to obtain the deposit monies.

37.    Moreover, Plaintiff entered into the Collateral Agreement and deposited $2.3 million in an escrow account controlled by BRENTWOOD and approximately $800,000 in interest and fees

to secure the Letters of Credit, which were later discovered by Plaintiff to be forged by the Defendants, because Plaintiff reasonably relied on Defendants to provide valid and legal Letters of Credit.

38.    The Defendants' actions were intentional, wilful and malicious and without legal justification.

39.    As a result of the foregoing, Plaintiff suffered damages.

## SECOND CAUSE OF ACTION FOR FRAUD IN THE INDUCEMENT

40.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 32 above as if fully set forth herein.

41.    The foregoing material representations of fact made by Defendants and reasonably relied upon by Plaintiff were false and known to be false when made by Defendants.

42.    Plaintiff was induced by Defendants to enter into the Note, the Loan Agreement and the Collateral Agreement to obtain the Letters of Credit from BRENTWOOD, based upon Defendants' representations and warranties to Plaintiff that BRENTWOOD and SPINELLI would return the $2.3 million Cash Collateral when the $5.7 million principal amount was paid to BRENTWOOD.

43.    Plaintiff reasonably relied on the material statements of fact made by SPINELLI that BRENTWOOD and SPINELLI would return the $2.3 million Cash Collateral when the $5.7 million of Letters of Credit were cancelled and returned to BRENTWOOD, which were known to be false when made.

44.    The false statements of material fact was intentional, wilful and malicious and without legal justification but emanated from Defendants for the express purpose of inducing Plaintiff to rely thereon and PRESIDION did in fact reasonably relied thereon when entering into the transaction with BRENTWOOD and SPINELLI.

45.    Plaintiff would not have executed the Note, the Loan Agreement and the Collateral Agreement had Plaintiff known the truth of all relevant and material facts related to the transaction.

46.    As a result of the foregoing, Plaintiff suffered damages.

### THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT

47.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 32 above as if fully set forth herein.

48.    On or about October 15, 2002, Plaintiff and BRENTWOOD entered into the Note, the Loan Agreement and the Collateral Agreement.

49.    Pursuant to the terms and conditions of the Note, the Loan Agreement and the Collateral Agreement, BRENTWOOD was obligated to provide Plaintiff with Letters of Credit worth $5.7 million if Plaintiff deposited $2.3 million into a collateral account and paid approximately $800,000 in interest and fees to BRENTWOOD.

50.    Defendant BRENTWOOD breached the Note, the Loan Agreement and the Collateral Agreement by providing invalid Letters of Credit and by refusing to return the Cash Collateral after the Letters of Credit when requested by Plaintiff pursuant to sections 3(d) and 3(e) of the Collateral Agreement.

51.     All conditions precedent to the filing of this action have occurred, been waived or performed.

52.     As a result of the foregoing, Plaintiff suffered damages.

## FOURTH CAUSE OF ACTION FOR CONVERSION

53.     Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 31 above as if fully set forth herein.

54.     Defendants BRENTWOOD, SPINELLI and MCCARTHA, who were paid fees to obtain the Letters of Credit, have converted to their own use the $2.3 million Cash Collateral and $800,000 in interest and fees, which was and is the exclusive property of the Plaintiff.

55.     As a result of the foregoing, Plaintiff suffered damages.

## FIFTH CASE OF ACTION FOR CIVIL CONSPIRACY
## TO COMMIT FRAUD AND CONVERSION

56.     Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 31 above as if fully set forth herein.

57.     Upon information and belief, Beginning in October of 2002, SPINELLI, acting outside his capacity as an office and director of BRENTWOOD, conspired with Brentwood, which provided validity to Spinelli's fraudulent actions, and MCCARTHA, to commit a fraud and conversion upon Plaintiff and its property by forging Bank of the West officers' signatures on documents prepared by Defendants to serve as Plaintiff's Letters of Credit in hopes that the Letters of Credit would expire in the one- year before they were drawn upon and before Plaintiff ever discovered the fraudulent signatures.

58.     Defendants also conspired to retain the Cash Collateral paid by Plaintiff for the fraudulent Letters of Credit.

59.     There is no legal basis for Defendants to retain Plaintiff's $2.3 million Cash Collateral pursuant to the Collateral Agreement and has unlawfully retained same.

60.     As a result of the foregoing, Plaintiff suffered damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered as follows:

1.     Rescission of the Loan Agreement and the Collateral Agreement and cancel the Note, including all guarantees, between Plaintiff and Defendant BRENTWOOD dated October 15, 2003 and to restore the Plaintiff to *status quo*.

2.     Compensatory, consequential and incidental damages in the amount to be fixed at trial but not less than THREE MILLION FORTY TWO THOUSAND DOLLARS ($3,042,000) for the first through fifth causes of action against Defendant BRENTWOOD, for the first, second, fourth and fifth causes of action against Defendant SPINELLI and for the first, fourth and fifth causes of action against MCCARTHA.

3.     Punitive damages in an amount to be fixed at trial by reason of wanton, willful and malicious character of the conduct complained of on the first, second, fourth and fifth causes of action against Defendants BRENTWOOD, SPINELLI and MCCARTHA.

4.     An award of costs and disbursements to Plaintiff.

5.     Such other and further relief as this Court may deem just, proper and equitable.

Presidion v. Brentwood, et al.
Case No.: 05 CV 7905

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S.

Regular Mail, this 14th day of June, 2006, to:

David M. Levy, Esq.
Levy & Boonshoft, P.C.
477 Madison Avenue
New York, NY 10022

Respectfully,

**BERMAN, KEAN & RIGUERA, P.A.**

By: _____
Richard E. Berman    (RB-2715 )
2101 W. Commercial Blvd, Suite 2800.
Fort Lauderdale, FL 33309
Telephone: (954) 735-0000
Facsimile: (954) 735-3636

\\Server-01\REBData\Mirabilis Ventures\1310-029\Documents\16109.wpd

**BANK OF THE WEST** 🐻

**CANCELLED**

**Bank of the West**
5482 Wilshire Blvd.
Department 107
Los Angeles, California 90036
323 428 3900
fax 323 937-1498

October 22, 2002                                    ₹-/8-03 ⟲

Credit Number:  GMB 556 20 3822

Account Party:  Presidion Solutions, Inc. and Amfinity Business Solutions
                755 W. Big Beaver Rd. Suite 1700
                Troy, Michigan 48084

Beneficiary:    Lumbermen's Underwriting Alliance
                2501 N. Military Trail
                Boca Raton, Florida 33431
                Attn: Joy Feingold                         **CANCELLED**

Dear Sir or Madam:

We have established this irrevocable letter of credit in your favor for drawings up to U.S.D. $4,700,000.00 (Four Million Seven Hundred Thousand Dollars ) effective October 22, 2002 and expiring October 22, 2003.

We hereby undertake to promptly honor your sight draft(s) drawn on us indicating our Credit No. GMB 556 20 3822 for all and any part of this Credit if presented at this office on or before the expiration date or any automatically extended date. Drafts drawn against this credit shall be noted on the reverse side of the Letter of Credit, which shall be returned to you. It is a condition of this Letter of Credit that it shall be deemed automatically extended without amendment for additional one (1) year periods, unless sixty (60) days prior to any expiration date we shall notify you by Registered Mail that we elect not to renew this Letter of Credit for any such additional period. Except as stated herein, this undertaking is not subject to any condition or qualification. The obligation of the above BANK OF THE WEST

Page 1 of 2

**CANCELLED**                                              **CANCELLED**


EXHIBIT
A

CANCELLED

Page 2 of 2 Credit No. GMB 556 20 3822 "Irrevocable Letter of Credit"

under this Letter of Credit is the individual obligation of BANK OF THE WEST, and is no way contingent upon reimbursement with respect thereto.

This Credit is subject to the Uniform Customs and Practice Documentary Credits (1993 Revision), International Chamber of Commerce, Publication 500. Notwithstanding Article 17 of said Publication, if this Credit expires during an interruption of business as described in Article 17, BANK OF THE WEST specifically agrees to effect payment if this Credit is drawn against within thirty (30) days after resumption of business.

By: BANK OF THE WEST

Joe Kaufman, Senior Vice President
PIN 6168
(323) 428-3900 (for confirmation of this letter)

David Allen, Vice President
PIN 7546

CANCELLED

3-15-03

CANCELLED

# BANK OF THE WEST

**Bank of the West**
5482 Wilshire Blvd.
Department 107
Los Angeles, California 90036
323 428 3900
fax 323 937-1498

# V O I D

October 22, 2002

Credit Number:  GMB 556 20 3821

Account Party:  Presidion Solutions, Inc.
755 W. Big Beaver Rd. Suite 1700
Troy, Michigan 48084

Beneficiary:     First Commercial Insurance Company
7900 N.W. 155 Street
Miami Lakes, Florida 33016
Attn: Rene Cambert, CFO

We have established this irrevocable letter of credit in your favor for drawings up to U.S.D. $1,000,000.00 (One Million Dollars ) effective October 22, 2002 and expiring October 22, 2003.

We hereby undertake to promptly honor your sight draft(s) drawn on us indicating our Credit No. GMB 556 20 3821 for all and any part of this Credit if presented at this office on or before the expiration date or any automatically extended date.

It is a condition of this Letter of Credit that it shall be deemed automatically extended without amendment for one year from the expiration date, unless sixty (60) days prior to any expiration date we shall notify you by Registered Mail that we elect not to renew this Letter of Credit for any such additional period.

Except as stated herein, this undertaking is not subject to any condition or qualification.  The obligation of the above BANK OF THE WEST

Page 1 of 2



EXHIBIT
B

Page 2 of 2 Credit No. GMB 556 20 3821 "Irrevocable Letter of Credit"

under this Letter of Credit is the individual obligation of BANK OF THE WEST, and is no way contingent upon reimbursement with respect thereto.

This Credit is subject to the Uniform Customs and Practice Documentary Credits (1993 Revision), International Chamber of Commerce, Publication 500. Notwithstanding Article 17 of said Publication, if this Credit expires during an interruption of business as described in Article 17, BANK OF THE WEST specifically agrees to effect payment is this Credit is drawn against within thirty (30) days after resumption of business.

By: BANK OF THE WEST

**VOID**

Joe Kaufman, Senior Vice President
PIN 6168
(323) 428-3900 (for confirmation of this letter)

David Allen, Vice President
PIN 7546